# EXHIBIT 14

# DECLARATION OF ERIN ROSSITER

I, Erin Rossiter, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge, and if called to testify, I could and would do so competently and truthfully on these matters.

2. I am an attorney in good standing in the state of Colorado and have practiced law here since 2013. I am a solo practitioner and own my law practice based in northern Colorado. I received my undergraduate degree from Western Michigan University and my Juris Doctor from the University of Colorado Boulder.

3. From 2013-2017, I was a Colorado State Public Defender; for almost two of those years, I was a juvenile public defender. From 2017 to 2022, I was an attorney at a small firm, Martin & Reed, where I took on Office of the Child's Representative (OCR) contracts to represent children as a Guardian ad Litem (GAL), Counsel for youth (CFY) as well as Alternative Defense Counsel (ADC) contracts to serve as defense counsel. I also took on private criminal defense and domestic relations cases. In 2022, started my own law firm where I currently only take OCR and ADC contracted cases.

4. In sum, I have worked in juvenile justice and as a GAL or CFY for children for the majority of my career. As a GAL/CFY, I have been appointed on cases across Colorado counties including Weld, Sterling, Morgan, Costilla, Arapahoe, Jefferson, Adams, Moffat, and Larimer. Most of my cases are in Weld County. I represent the best or direct interests of children and youth, which includes advocating for their health, safety, and well-being. I work with children navigating the delinquency and/or dependency systems. I regularly meet with youth in detention facilities, communicate with their families and caregivers, and review case files, court orders, and placement plans.

5. In my 9 years as a GAL/CFY, I have represented hundreds of children. At any given point in my current practice, I represent around approximately 30-50 children in the Juvenile Division of Weld County.

6. In reviewing the amended complaint filed in *Isaac N. v. Polis,* I observed that the allegations set forth there are common problems my clients routinely face. I have seen many children who, like Isaac N., Tony S., and Vegeta K., are deemed releasable by a judge so long as the Department of Human Services (DHS) sets up a placement or service, such as a Qualified Residential Treatment Program (QRTP) or Psychiatric Residential Treatment Facility (PRTF), in-home therapy, family therapy, or mentorship services.

7. In Weld County, the terminology the courts use is that these children are on a "YAMS" bond, which stands for Youth Awaiting Mitigating Services. These services take weeks or sometimes months for CDHS and its local agencies to set up for these children, so they remain in detention despite an order saying they can be released with services.

8. In this past year alone, I have had multiple releasable children who waited in detention for placements after a judge or magistrate said they could or should leave detention. Almost all waiting for residential placement waited multiple weeks to over a month before the state or county DHS found a placement for them. Examples include:

    a. I worked with one youth recently whose delinquency cases included a misdemeanor and a lower-level felony charge. DHS was involved with this youth. This youth remained in detention for 55 days before the youth was able to leave for placement. 41 of those days this youth was on releasable status ("YAMS" bond) and delays were in part due to delays in securing educational funding for the facility school as well gaining an acceptance to a placement.

    b. In another case, a youth with two pending misdemeanor charges was denied by all Colorado residential placements that the state/county explored. This youth sat in detention for over 80 days until CDHS/DHS secured an out of state placement and transport for them. Ultimately this youth was committed to the division of youth services when out of state placement could not provide the correct type of therapy. The court found that lack of appropriate congregate care was a factor in the child's commitment to the division of youth services. Youth are being sent to juvenile prison because of the lack of placements and services.

9. When there are no in-state residential placements, out of state can be considered. I have seen an increase in having to look for out-of-state residential placements for children because there are simply no openings for them in Colorado. This severs or strains ties with family, makes the youth less accessible to their professional team and lawyers and takes them away from their community supports and school.

10. In my observation it also seems that placements take even longer for children waiting in detention. The sense of urgency at the responsible agencies for placement and advocacy is not there, in part because the youth is in detention and not unhoused or having to sleep in the lobby of a DHS office.

11. There are serious issues with placement availability across the counties I serve. The state of Colorado has too few placement options at the residential level and lower. Many of the youth I work with are rejected by the placements who do have openings, sometimes without any reasons given or a recommendation on how they could be eligible in the future, and sometimes citing very common terms that stigmatize children without looking deeper, such "runner" or "aggressive. "

12. I have also observed DHS refuse to even do a placement search for youth with higher-level offenses, simply stating that no placements will take them. In addition, DHS is not giving the children's attorneys the information that is being sent to placements about their client.

13. In my experience, children with "big behaviors" and children with disabilities that cause disruption often wait an especially long time. Placements prefer to take kids that are easier. They can do this because of the high demand for placement beds.

14. Across my cases, I have observed that Colorado and DHS do not have adequate and accessible policies or procedures that allow a youth to be released in a timely manner once a youth has been found releasable. (Or deemed not releasable because there is not a stable or structured enough place for them to go.) Outcomes can vary wildly by county or even by caseworker. The state does not have a consistent approach to assessing youth who may need treatment, and coordination among agencies is disjointed and full of red tape.

15. Youth detention caused by placement and service delays has harmed the children on my caseload in concrete and compounding ways. I have seen children stuck in these situations who pick up additional charges or are victims due to the violent nature of detention facilities. Youth stuck in detention lose vital social-emotional development as they spend critical childhood time in secure facilities, receiving a subpar detention education. Youth lose connection with families who cannot visit often, and lose connections with siblings who are simply not allowed to visit because of their age. Youth have lost the ability to have in-person contact with families at times due to facility restrictions, restricting even family visits to virtual only because the facilities say there is widespread introduction of contraband.

16. Based on my experience as a GAL and a juvenile public defender in the Colorado juvenile delinquency system, the delays in release my clients experienced are consistent with broader systemic problems stemming from the State's failure to provide adequate services and placements. Colorado needs more community-based placement and services,. Children should not unnecessarily remain in restrictive environments that are harmful and poorly equipped to meet their developmental and therapeutic needs.

I declare that the foregoing is true and correct to the best of my knowledge.

Executed on the 28th day of August, in Larimer, Colorado.

Erin Rossiter
Atty. Reg # 46290