# EXHIBIT 17

DECLARATION OF KATY SAEHLER

I, Katy Saehler, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify, I could and would do so competently and truthfully to these matters.
2. I serve as a Guardian *ad Litem* ("GAL") and Counsel for Youth through the Office of the Child's Representative ("OCR"). I operate my practice, Saehler, Inc., in Denver, Colorado.
3. I am an attorney in good standing licensed to practice law in the State of Colorado.
4. I was admitted to the California Bar in 2009 and practiced there until 2012. I have been licensed to practice law in Colorado since 2013. I became a Guardian *ad Litem* in 2014. I have served as a GAL continuously since that time, representing children in juvenile delinquency and dependency proceedings.
5. I maintain extensive training and continuing legal education as required by OCR. I am one of a small number of GALs across the state who actively represent youth in direct file and transfer cases.
6. I practice primarily in Denver Juvenile Court, as well as in El Paso, Weld, Jefferson, Arapahoe, and Adams Counties. I estimate that in the past ten years, I have represented approximately 700 to 750 children in Colorado juvenile court.

**General Observations Regarding Releasable Youth**

7. In my work as a GAL, I have repeatedly represented children whom the juvenile court has deemed releasable to the community, but who end up languishing for weeks or months at a time locked in secure juvenile detention facilities after such an order, because

the State has not created appropriate treatment programs in the community to meet the children's needs. This has been particularly acute since 2020.

8. I have observed that children in the foster care system are more likely to remain in detention longer because they must rely on the Department of Human Services for placements since they do not have a family home to return to. DHS may prioritize finding placements for dependency and neglect ("DNN") children who are not involved in the juvenile delinquency ("JD") system.

9. Similarly, my clients regularly have disabilities such as attention deficit/hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), disruptive mood disorder ("DMD"), substance use disorder, and other mental health conditions. These clients regularly require accommodations such as Individualized Education Programs ("IEPs") for learning disabilities, medications, and other therapeutic supports that they struggle to receive while in detention.

10. I have witnessed youth remain in detention waiting for a placement because they have no family to return to and the state lacks options for alternate placements.

11. Due to the overwhelming demand for very few placements, placements can be extremely selective and avoid youth with complex needs, mental health disabilities, and juvenile justice connections, like the youth I regularly represent.

**Lack of Policies and Procedures for Timely Release**

12. Consistently across my cases, I have observed that Colorado DHS lack policies or procedures that facilitate a youth's release once a court has found the youth releasable.

The process heavily depends on the individual team assigned to the case, the relationships between those team members, and how well they get along.

13. GALs feel like they have to assist in finding placements for their clients, often relying on personal relationships with foster homes rather than any systematic process administered by the State.

14. Once a youth is found releasable, the process varies dramatically depending on the county and the individuals involved. In some cases, DHS caseworkers conduct placement searches through placement navigators. GALs can request reports on which placements have been contacted, and courts can order DHS to provide updates.

15. Counties vary how they investigate whether homes are a good fit and whether a placement is needed.

16. In one instance, I saw a county write up a detailed placement assessment and file it with the court, but I have not seen that in other counties.

17. Some counties write placement reports to determine whether a youth qualifies for placement, but others do not.

18. Between counties, there is no standardized information package provided to placements, and no consistent timeline for completing the process, from my perspective.

19. DHS frequently fails to timely take necessary actions to ensure that youth are released when they should be: including locating placements, enrolling children in school, arranging for individual therapy, and connecting youth with mentors.

**Inadequate Assessment Processes**

20. In counties across the state, there is not a consistent or effective approach to assessing youth who may need treatment.

21. At times GALs request assessments and at times a court will order DHS to become involved to investigate services and placement and that order will result in a referral for an assessment.

22. From start to finish, the assessment process typically takes approximately three weeks to a month. While assessments are being completed, youth remain in detention, despite orders allowing them to be released.

23. The counties' assessment processes vary from one another. For example, in Denver, DHS conducts a "pre-screen" before a full Qualified Residential Treatment Program ("QRTP") assessment, and frequently determines that a youth "probably won't qualify," which deters professionals from pursuing the assessment further. I have not observed this same process in other counties.

24. Across the state, the assessments heavily rely on a documented history of diagnoses. However, many of my clients lack formal diagnoses—not because they do not have mental health conditions, but because they have never had access to diagnostic services. In practice, youth who potentially could qualify for placements do not because of the assessment process.

25. Even when assessments are completed, they frequently recommend services that do not exist in the community. For example, assessments may recommend specialized therapies such as eye movement desensitization and reprocessing ("EMDR"), multisystemic

therapy, or psychological evaluations—services for which there is no accessible provider, particularly for detained youth.

**Insufficient Placements and Services**

26. I have observed in practice that the State of Colorado does not have sufficient placements or services available for youth found releasable. The juvenile justice community knew for years that changes in federal requirements would impact placements in Colorado, yet DHS did nothing to prepare stakeholders for the transition. There was no coordination with probation or pretrial services about how to manage the reduction in available placements. DHS simply allowed placements to disappear without developing alternatives or communicating with the agencies that would bear the consequences.

27. The landscape of available placements has deteriorated significantly in recent years. There are very few remaining residential placements statewide. For youth who need foster homes, the situation is dire. The State promised Therapeutic Foster Care homes, but I cannot name a single one that has materialized for my clients. We no longer have adequate group homes.

28. For youth who qualify for QRTP-level placements, the available options are essentially limited to four placements who are able to be extremely selective about the youth they accept. In practice, this means facilities that exist do not want to take the most difficult children.

29. Counties also vary in their access to placements, both in quantity and level of care.

30. The practical options have narrowed to foster homes and the few remaining residential facilities. Children are placed wherever an opening can be found, regardless of whether the placement is actually appropriate for the child's needs.

31. With respect to community-based services, DHS has largely abdicated its responsibility. In my practice, DHS no longer provides services to juvenile delinquency clients. If any of my clients are receiving services—family therapy, individual therapy, mentoring, school enrollment—it is because I personally arrange for the services. I call providers directly and tell them I have a child who needs services. DHS's role has been reduced to making referrals for family therapy and completing paperwork to shift responsibility to Colorado Access or to the GAL.

32. There are services that my clients need, but struggle to access because there is not sufficient coordination at the state level. There is an ad hoc patchwork that depends on individual practitioners knowing which providers exist and having relationships with them.

**Failures of Inter-Agency Coordination**

33. In my practice, I have found that Colorado does not coordinate amongst its agencies to resolve the problems that juvenile justice stakeholders consistently face.

34. From my perspective, I have seen DHS attempt to avoid being court-ordered into delinquency cases. In these cases, DHS has claimed it should not be involved even when a child is placed out of the home.

35. In my experience, DHS is reluctant to participate in the collaborative process necessary to secure timely release for releasable youth.

36. DHS has also attempted to shift its responsibilities to other agencies. DHS tries to get pretrial services and probation to take over tasks that are properly DHS's responsibility, and it pushes GALs to make referrals that DHS should be handling. This pattern is

consistent across my cases: DHS treats delinquency-involved youth as someone else's problem and actively works to minimize its own involvement.

**Conclusion**

37. Based on my experience as a GAL working in the Colorado juvenile delinquency system for over a decade, the delays in release that my clients have experienced are consistent with broader systemic problems caused by the State's failure to develop an appropriate range of community-based services and placements for children. These are not isolated incidents affecting individual children with unique circumstances. They are the predictable and repeated consequences of a system that lacks adequate placements, meaningful services, standardized procedures, and inter-agency coordination.

38. I have reviewed the amended complaint filed in *Isaac N. v. Polis*, and the allegations set forth there are representative of the problems that my clients in Denver County regularly face. I have seen many children substantially similar to Isaac N., Tony S., and Vegeta K. who have been found to be "releasable" but remain in detention because the State cannot or will not provide appropriate community-based alternatives. The problems described in the complaint are not unique to the named plaintiffs; they are the common experience of releasable youth across my caseload and across the counties where I practice.

Executed on 22 of September, 2026, at Westminster, Colorado.

/s/ Katy Saehler

Katy Saehler