# EXHIBIT 20

DECLARATION OF MADISON WHITLEY

I, Madison Whitley, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify, I could and would do so competently and truthfully to these matters.

2. I am a solo practitioner and own my law firm, Whitley Law LLC, registered in Denver, Colorado. I have a contract with the Colorado Office of the Alternate Defense Counsel ("ADC"), through which I represent indigent clients.

3. I am an attorney in good standing in the State of Colorado and have practiced law here since 2021. I specialize in the practice of juvenile delinquency and have done so for my entire legal career. I also have specialized training in representing youth whose cases have been filed directly in adult court ("direct files") and representing youth whom the District Attorney seeks to transfer to district court ("transfers"). I was recently selected to be an at-large member of the Colorado Bar Association's Juvenile Law Section. I have also attended over 35 hours of juvenile specific CLE trainings.

4. I practice in Denver, Mesa, Adams, Boulder, Larimer, Arapahoe, Jefferson, El Paso, Douglas, and Weld County juvenile courts. According to my records, in the past five years, I have represented approximately 351 children in Colorado juvenile court. I often carry a caseload of around 50 youth.

5. I have reviewed the amended complaint filed in *Isaac N. v. Polis*, and the allegations set forth there are representative of the problems that my clients in counties across the state regularly face. I have seen many children substantially similar to Isaac N.,

Tony S., and Vegeta K. who have been found to be "releasable" but remain in detention like these three children.

6. In the five years that I have been practicing as an Alternate Defense Counsel, at any given point I am representing at least one youth on my caseload who has been found releasable by a judge but remains detained due to a lack of placements or services.

7. I presented at the 2025 Excellence in Youth Defense Conference, hosted jointly by the Colorado Public Defender's Office and the Office of Alternate Defense Counsel, and at the 2025 Office of Respondent Parents' Counsel Conference about the Colorado Department of Human Services' failure to find placements for releasable youth.

8. Across the state, judges use different language to indicate that a youth is "releasable," although the meaning is the same - namely that there is either no judicial finding that the youth is a danger to the community or a flight risk or, if there is, that placements or services could reasonably mitigate such risk. Either way, the youth is simply waiting on placements or services to be released from detention.

9. For example, in Arapahoe, Adams, and Douglas counties, judges often issue an order authorizing "placement in lieu [of bond]" to indicate releasability.

10. In other counties, like Denver, judges often make a youth "releasable upon agreement" of certain parties such as a guardian *ad litem*, pre-trial services, and the DHS caseworker, if one is assigned. In practice, the ability of the parties to reach agreement is based upon the existence of an available placement or service to meet a youth's needs.

11. There are other times when a judge orders a youth releasable to a parent or guardian so long as a specific service can be put in place, such as in-home therapy, family therapy, or mentorship services. In these situations, youth wait in detention, despite an order establishing releasability, to wait for the service to become available.

12. On multiple occasions, I have represented children who the juvenile court has deemed releasable to the community, but who end up languishing for weeks or months at a time because DHS has not arranged appropriate placements or services to enable their release.

13. I frequently discuss the issue of youth who are releasable, but cannot find placement or services, with other attorneys in the state. In this informal, anonymous way, attorneys keep track of the kids who are releasable but remain stuck in detention. At any given time, there is always at least one youth whom I am aware of among my colleagues who is releasable but remains in detention.

14. It is often unclear who at DHS is handling a youth's case. One caseworker may handle a youth at intake, but pass the case to another "ongoing" caseworker. This is often done without communication to defense counsel, like myself, or the guardian *ad litem*. The case handovers often lead to moments when someone "drops the ball" and critical actions, like setting up assessments or getting a signed parental release, do not happen or do not happen in a timely manner. The process also varies from county to county.

15. DHS is responsible for submitting referrals to placement and services. But, in practice, DHS does not timely submit these referrals. I am typically not given notice or copies of these referrals. I often find myself asking DHS about their referral efforts.

16. At times there have been family members willing and able to be a placement for my client, but DHS did not complete the necessary background checks or paperwork in a timely manner, so my client remained detained.

17. Most of my clients have disabilities such as ADHD, PTSD, and other mental health conditions, including those related to trauma. Many of my clients have IEPs (Individualized Education Programs), which reflect their schools' plans to accommodate their disabilities.

18. Despite the prevalence of mental health disabilities among this population, the state does not have a consistent approach to assessing youth who may need treatment or services for their disabilities. Sometimes a judge will order an assessment, sometimes DHS will initiate an assessment, and sometimes team members like a GAL or myself with request assessments.

19. Despite court orders for assessments or DHS initiating an assessment, I have seen DHS delay the process or simply fail to get it started. I often am pushing forward assessment processes and asking if they can be started.

20. For example, recently, DHS was supposed to begin an assessment for a specialized type of care for one of my clients. DHS did not start the assessment, and I was told "it fell through the cracks."

21. While some assessments are supposed to be completed on specific timelines, there is no recourse when DHS fails to complete the assessments on time. For example, for a youth to be considered for a placement in a Qualified Residential Treatment Program ("QRTP"), which are designed to be trauma-informed and able to handle youth needing a higher level of care, DHS must make a referral for an Independent Assessment ("IA"). DHS contracts with the regional Administrative Services Organizations ("ASO"), who handle the IA process. DHS is supposed to submit the IA request to the ASO within 14 calendar days, and the ASO is supposed to share the results of the IA to DHS within 10 business days. However, if the request for the IA is delayed, or if the IA process itself is delayed, it can lead to youth remaining in detention longer because placement options cannot be lined up until the IA determines whether they qualify for the placement (or not). This similarly applies to Psychiatric Residential Treatment Facilities ("PRTF"), which are non-hospital inpatient programs, one step up from QRTP placements, designed for youth who need intensive psychiatric care, but not to the level of an inpatient hospital program. DHS can place a youth in a PRTF if the Colorado Client Assessment Record ("CCAR") indicates that the youth's needs rise to the level of a PRTF placement based on, among other considerations, input from a certifying doctor or psychiatrist.

22. Additionally, I have observed in practice that DHS simply does not have sufficient placement and services available for youth found releasable. The department consistently struggles to place youth whom I represent who need placement.

23. Throughout the state we face waitlists for residential placements, for therapists, and for mentorship programs, amongst other things.

24. Even when my clients are accepted at certain placements, they must wait for a bed to become "open." In my experience, my clients can typically wait anywhere from around two weeks to around two months to be accepted into placement or, if accepted, for a bed to open up.

25. For foster youth, DHS's own legislative report from fiscal year 2024-2025 states that at the time of publishing, there were only 231 foster homes in Colorado for youth between the ages of 10 and 20, which is insufficient to meet the needs of the youth in the state. The report from fiscal year 2025-2026 has not been published as of the time this declaration was drafted.

26. Foster homes reject youth involved in the juvenile justice system without explanation, and I have been told things like "foster homes do not want kids who have committed property crimes." Foster homes do not have to explain why they chose to reject a youth.

27. Commonly, I represent youth who are not formally "foster youth," but who cannot be placed with their parents at the present time (at times due to a judicial order). In my experience, DHS actively tries to avoid assisting with such cases. I have even been told that DHS "needs to save foster homes for kids who have nowhere else to go." In practice, these youth then become stuck in detention because they cannot return home, yet DHS cannot or refuses to find an alternate placement.

28. In my practice I have found that Colorado does not coordinate amongst agencies to resolve problems we consistently face.

29. For example, even when we can find a placement for a youth, there are often disagreements amongst agencies about who will fund the youth's placement or services.

30. Based on my experience as Alternate Defense Counsel working in the Colorado juvenile delinquency system, the delays in release that my clients experience are consistent with broader systemic problems due to the DHS's failure to develop an appropriate range of community-based placements and services for releasable youth and to develop consistent practices and procedures regarding assessments and case management for such cases.

Executed on the 19th Day of August, 2026, at Denver, Colorado.

Madison Whitley

Atty. Reg. #56545