# EXHIBIT 22

DECLARATION OF CARTER HILTY

I, Carter Hilty, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify, I could and would do so competently and truthfully to these matters.

2. I am an Associate Attorney with Angela Campbell Law Group located in Denver, Colorado. Through my role, I serve as alternate defense counsel and private counsel for youth facing juvenile delinquency charges.

3. I am an attorney in good standing in the State of Colorado, practicing law here since October 2024. Before I was officially licensed, I practiced under the student practice act since my second year of law school. Over the past two years I have practiced juvenile delinquency law.

4. In April of 2024, I attended a two-day CLE training called Excellency of Youth, where I learned about holistic youth representation. I also receive significant, meaningful mentorship from more experienced attorneys.

5. I practice in Denver, Arapahoe, Adams, Jefferson, and Eagle County juvenile courts. I estimate that in the past two years, I have represented at least twenty to thirty children in Colorado juvenile court.

6. In my work, I repeatedly represent children who the juvenile court has deemed releasable to the community. In about half of my cases, I have seen youth found releasable, yet remain in juvenile detention.

7. Judges frequently use the phrases "placement in lieu," "PR bond to guardian or parent," "placement upon agreement," "release upon agreement" to indicate that a youth is releasable without returning back to court and does not pose a substantial risk of serious harm to others or of flight, or that any risks can be sufficiently mitigated.

8. In my experience, the youth who I represent, including those who are unnecessarily detained, frequently have disabilities. My clients regularly struggle with substance abuse disorders and mental health disorders like attention deficit/hyperactivity disorder ("ADHD"), major depressive disorder, and post-traumatic stress disorder ("PTSD").

9. As an advocate, I have witnessed significant challenges finding youth appropriate placements when they are releasable, yet cannot go home.

10. As an example, for one youth I represented who needed a placement after being found releasable, DHS's recommendation flip-flopped and seemed to lack a clear direction. For this youth, DHS first started by looking for foster homes, but then decided to explore other residential placement options. A temporary, 21-day program was identified and a spot secured, but DHS still did not have a plan for this youth's future. Despite needing a more permanent placement, like a foster home, DHS informed me they would not even begin to reach out to foster homes until 7 days before the placement was needed.

11. The counties where I practice do not share a consistent approach to assessing youth who may need treatment. In some counties, the process is started with a judicial order, in others caseworkers initiate the process. One county uses a pre-screen for

assessments to decide whether to pursue a full evaluation, but I have not seen this in other counties.

12. At its shortest, the assessment process takes two weeks, but it can take over a month to be completed. My clients sit in detention, despite having releasability orders, while the assessment process is completed.

13. From what I have been told, the assessment process is based on conversations with the youths and records review. Some of my clients need support, but lack health records, so assessments are incomplete.

14. Colorado does not have enough placements for my clients.

15. For youth who have been found eligible for Qualified Residential Treatment Programs ("QRTPs") there are not many options. Often my clients will not be accepted to the few QRTP that exist due to challenging behaviors or their charges. When a client qualifies for QRTP, they often must wait for a spot to open.

16. For my clients who are not eligible for a higher level of care, like a QRTP, there is greater variety in placements, but still not enough of them.

17. Colorado needs more foster care options, bridge programs, and other temporary placements.

18. Although Therapeutic Foster Care is a placement option, I have only had client placed there. Therapeutic Foster Care is an example of a placement where I think many of my clients would thrive, but there do not seem to be enough placements to meet the demand.

19. My clients have spent weeks waiting for DHS to find an appropriate placement despite being releasable.

20. While DHS is tasked with finding placement, my office will use staff to investigate options for our clients. At times we reach placements who have open spots and suggest those to DHS.

21. At times, my clients' release is dependent on arranging services like therapy and mentorship. However, my clients have trouble accessing needed services. There are limited providers and organizations who provide the services my clients need. This pool of providers is further limited by geography and my clients' transportation constraints. While virtual services can sometimes be provided, not all providers will agree. In short, a higher number of providers spread across the state would allow more of my clients to access needed services.

22. Based on my experience as alternate defense counsel in the Colorado juvenile delinquency system, the delays in release that my clients experience stem in part from the State's failure to develop an appropriate range of community-based placements and services for children.

23. I have reviewed the amended complaint filed in *Isaac N. v. Polis*, and the allegations set forth there are representative of the problems that my clients regularly face.

Executed on 23 of September, 2026, at Denver, Colorado.

/s/ [signature]
Carter Hilty