# EXHIBIT 25

# DECLARATION OF TIERA BROWN

I, Tiera Brown, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge, and if called to testify, I could and would do so competently and truthfully on these matters.

2. I am currently the Director of Believe in Youth, Learn Your Rights in the Community (LYRIC), and Partnerships at the Transformative Justice Project of Colorado (TJP). I have been in this role permanently since December 2025. TJP programs provide holistic support to system-impacted youth in Colorado through legal advocacy, mental health services, court accompaniment, resource navigation, and community-building.

3. I am an attorney registered to practice in the District of Columbia, and I am certified to provide *pro bono* representation in cooperation with TJP pursuant to C.R.C.P. 204.6. I earned my Juris Doctor from the University of Denver, Sturm College of Law in 2020.

4. From June 2025 to August 2025, and from December 2025 to September 2026, I was a Community Cares case manager at TJP. In that role, I had a caseload of individual youth clients, many of whom were detained in Division of Youth Services (DYS) facilities. At any given time, I worked with 20 kids ages 10 and up. My responsibilities included visiting kids in the facilities to ensure they had human connection, providing support and advocacy, and working with them in concrete ways, such as facilitating connections with their attorneys and supporting their families while they were in DYS custody. I also worked closely with young people's legal teams to identify and provide supports for them, both in detention and upon release.

5. TJP's Community Cares program provides a range of services and supports to young people and their families, including mental health services (counseling, crisis intervention, support groups), legal and education advocacy, court accompaniment, transportation to court and probation, resource navigation (jobs, housing, education), and community connection through monthly Community Nights and our food pantry. Through TJP's Believe in Youth Program, I provide free legal representation to youth and young people throughout the expungement and sealing process, ensuring young people's rights are protected.

6. Through my work at TJP, I serve youth all across Colorado, including in the Denver area and as far south as Colorado Springs and El Paso, and as far north as Fort Collins, Boulder, Jefferson, and Adams counties.

7. I have worked with many pre-adjudication youth in DYS detention facilities. Many of these youth have a judge's order of release but remain in detention awaiting services or placement. Sometimes these kids learn that they are releasable before I do. Their counsel will tell them or they hear it in their hearings. When I see them next, they are so excited, animatedly telling me, "I'm getting out of here soon," and then six months later they are

still there. These kids go through a depression cycle after looking forward to release and then not getting out. It is incredibly harmful and demoralizing.

8. Kids staying in detention despite having an order that they can be released is a regular occurrence. This is especially true for kids who require a higher level of mental health support, or who are struggling with sobriety; even Qualified Residential Treatment Program (QRTP) options take quite a long while. DHS also has significant lag because they have to make the referrals. When we ask DHS about the lags, DHS tells us something like, "there's nowhere to put him" and "the waitlists take time."

9. Because of the lack of placements, I have seen kids who would be better served in one type of placement forced into another where the situation does not fit their needs. This often happens to youth with high-level mental health needs or youth requiring substance use treatment. These inappropriate placements also tend to happen to youth in the dependence/foster care system and to Black children. For example, I supported a youth who was deemed releasable but was placed in a residential program more than three hours from his home because there were no appropriate local options. The placement ultimately did not meet his needs, his substance use increased while he was there, and he eventually went AWOL and returned to DYS custody. I have seen similar situations where youth cycle between placements and detention not because their needs have changed, but because an appropriate placement is unavailable.

10. I currently work with a child in the Denver area who is in pre-trial detention, has an order for release from a judge, but has sat in detention for almost a year because DHS cannot find him a placement. Because of the nature of the charges in his case, many available placements have declined to accept him, despite DHS's determination that returning him home with intensive services could be an appropriate option. As a result, the youth remains in detention not because the court has ordered that he remain detained, but because DHS has been unable to identify and secure an appropriate placement willing to accept him. In cases like these, DHS can and should engage community partners already working with the youth to assist in the placement process. DHS could also determine which community partners have relationships with additional providers or resources that DHS has not identified. Lastly, DHS should explore kinship and extended-family options more broadly in an effort to provide more placement possibilities.

11. This is a recurring problem that often plays out the same way. A child is deemed releasable by a juvenile court judge either on "agreement of the professionals" or "pending placement" or "awaiting services." Then, DHS is engaged to start the process. Because TJP knows this is where things really slow down, we also do a placement search because it has gotten to the point where we all know DHS is not doing enough and there are too few placements. We regularly suggest placements or options to DHS, but ultimately it is their

responsibility to find and approve placements. We all wait on DHS. There's little success. Then everyone throws the ball around about who is responsible for making sure these kids get back in the community. DHS acts like they are not responsible, when in fact, they are the only ones who can get the kid out. All parties involved – County DHS, Guardian Ad Litem, Defense Counsel, the Court, the kid's family – all reconvene. We start the cyclical process over again. Meanwhile, the kid is stuck in detention waiting.

12. Not only are there too few placements, but the processes for securing placements are extremely lacking. As a TJP case manager, I was so concerned a child was not being released that I went into the community, found a placement, and facilitated the admission. They accepted the child, but said they needed a direct referral from DHS. I went to DHS and explained I found a suitable placement that was holding a spot open for the child. DHS took so long to respond to the placement with its referral; my request got sidelined, by the time DHS acted, the placement said they had to turn the spot over, and it was no longer available.

13. Often DHS does a full placement search, comes up short, then returns to Court and suddenly says "we recommend a return home," even when home has previously been determined to be unsuitable for the child's needs. Other times we attend a child's detention hearing, and DHS has been charged with finding a placement, returns to court and asks to be taken off the case, citing that they are having budget issues. Even when this means the child has to sit in detention longer, they are operating from a monetary bottom line at the child's expense.

14. I have also observed that DHS has less knowledge of placements and less creative thinking compared to our case managers at TJP. For example, one child I worked with wanted to be released to his grandmother. The juvenile court judge did not want that because the grandmother was a much older adult and could not be as active in supervising the child. TJP came in and said to the court, "What if TJP installs outside cameras at the home so the child has extra accountability and supervision?" The judge liked that and the child was released. That step, along with offering TJP's community-based services, allowed the child to leave detention. If DHS truly partnered with its community partners and had processes to do so, we could solve many of these problems. For example, DHS is very limited in supplying transportation to support kids and their families with accessing services or participating in probation. We could do more of that if they communicated, were responsive, and engaged with us.

15. TJP, and community organizations like ours, are successfully supporting releasable kids. Several youth we have supported have remained safely in the community, attending school,

working, and participating in services. We have also supported youth who successfully completed QRTP placements and were able to step down to less restrictive settings as their needs changed. These experiences demonstrate that, when youth have appropriate supports and placements, they can remain in the community while continuing to address their individual needs.

16. Too often, it seems like we are the only ones who want to get these kids out of detention. Time in detention sucks the life out of children. I have one kid who is still in detention now. When he first got there, he was a joyful kid who was very engaged. He wasn't necessarily happy because his circumstances outside of detention were horrible. But he had energy and excitement about his life. As time passed and he stayed longer in detention, you could see his spirit leaving him. He is no longer optimistic about life. He is withdrawn and detached. He has been in detention for approximately thirteen months and the withdrawal started within the first six months.

17. I have also worked with many younger kids who go into detention and come out with new and far worse behaviors. They learn these behaviors in the detention environment and come to associate those behaviors with impressing people. These facilities have an unhealthy socialization process for kids.

18. Many of the kids I work with become incredibly depressed while in detention. They worry constantly about home. TJP works with their families to help the kids breathe easier. The impact on their education is astounding. Kids come into facilities and can only take one credit at a time. There are huge schooling disruptions. Facilities regularly don't have educators, and classes aren't offered.

    I worked with another child who went into detention, and I could see him becoming more and more depressed. Fighting was not an issue for him before detention, but suddenly he started getting into fights randomly in detention, and he did not know why. The mental toll detention took on him was unmistakable. Before being detained, they have goals and ideas about what they want to do. As time passes, these kids lose their desire to work on their goals or build skills that will help them outside detention.

19. Kids often have great ideas about where they should be placed. TJP creates release plans that contemplate their ideas and insights. Sometimes they get very excited about a potential placement. For example, maybe their friend had a positive experience in a QRTP, and they want to give it a try. Judges and DHS do not take this seriously. But when a kid is bought into a placement, they have more success in it.

20. Based on my observations of releasable youth's experiences, the state needs to provide more placements, build stronger relationships with existing community organizations like TJP and fund them, and create clear, followed processes to get kids out of detention when they can leave. I would also like to see community organizations be funded and allowed to create housing options for these youth.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on the 30th day of September, in Denver, Colorado.

s/ *Tiera Brown*

______________________________

Tiera Brown
Atty. Reg # 24PB0255